UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARMING BEATS LLC,

                    Petitioner.

CIVIL ACTION NO.: 21 MC 773 (GHW) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Petitioner Charming Beats LLC ("CB") requests that the Court issue a subpoena (the "Subpoena") to Audiomack Inc. ("Audiomack") pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(h).  (ECF Nos. 2–2-3 (the "Application")).  After filing the Application, CB filed a letter-motion to compel the Southern District of New York Clerk's Office to issue the Subpoena.  (ECF No. 5 (the "Motion to Compel")).  For the reasons discussed below: (i) CB's Application is GRANTED, and (ii) CB's Motion to Compel is DENIED AS MOOT.

## II. BACKGROUND

### A.  The Notices

Audiomack is "a free[] music sharing and discovery platform for artists" serving "millions of fans." (ECF No. 2).  About, Audiomack, https://audiomack.com/about (last visited Oct. 26, 2021).  On September 9, 2019 at 12:09 p.m., Richard Garbarini, Esq. ("Garbarini"), acting on behalf of CB's predecessor in interest, Yesh Music, LLC ("Yesh"), submitted a form on Audiomack.com[1] — for a fourth

---

[1] Audiomack's website includes a "DMCA Notice [F]orm" introduced by text that reads: "Audiomack respects the rights of copyright holders and will work with said copyright holders to ensure that infringing material is removed from our service.  We monitor file uploads to make sure that copyrighted material is not uploaded and proactively

time[2] — to alert Audiomack that a copyright-infringing audio recording (the "Infringing Content") existed on its website, and request that Audiomack both remove the Infringing Content and notify the original posters of their violation.   (ECF No. 2-1 (the "Fourth Notice")).   Garbarini's Declaration (the "Declaration") states that the Fourth Notice was also "formally served [on Audiomack] by certified mail." (ECF No. 2 ¶ 5).  The Fourth Notice stated, in relevant part:

> Each of these links [referring to: https://audiomack.com/song/wise13/caramelo] infringe[s] my client's copyrighted recording *Anything You Synthesize*.  After careful consideration, no fair use, fair dealing, or a similar exception applies to the above.  This notice is under Section 512(c) of the [DMCA], and, once again, my client Yesh seeks the removal of the aforementioned infringing material from your servers.  I, on behalf of my client, demand Audiomack immediately notify the infringers of this notice and inform them of their duty to remove the infringing material[.] . . . Rest assured, this is the fourth Take-Down Notice and in the event these posts are not removed immediately, we will file an action against Twitter [sic] in the Federal Court for the Southern District of New York. I am providing this notice in good faith and on the express written authority of Yesh[], with the reasonable belief that the rights of my client are being infringed.  Under penalty of perjury I certify that the information contained in the notification is both true and accurate, and I have the authority to act on behalf of the owner of the copyright(s) involved.

(ECF No. 2-1 at 2–3 (emphasis added)).  Minutes later, at 12:52 p.m., David Ponte ("Ponte"), Co-founder and CMO of Audiomack, replied: "This has been removed."  (Id. at 2).

Over two years later, on October 7, 2021, when the Infringing Content reappeared on Audiomack's website, Garbarini again wrote to Ponte:

> I represent [CB,] the sole owner, by assignment, of the copyrighted recording and composition *Anything You Synthesize* – U.S. Copyright No. SR 713-287 (the "Copyrighted

---

ban any users that do not adhere to our terms of service.  In cases where you feel a file infringes on your copyright or the copyright of someone you represent, we encourage you to use this page to notify us.  Audiomack will respond to any and all takedown requests that comply with the requirements of the [DMCA], and other applicable intellectual property laws.  If you believe that a file that a user has uploaded to Audiomack infringes on your copyright then please use the form below to submit a request.  Be sure to include your relationship to the owner of the copyrighted work, your full contact info, and the URL of the song/album you are referring to."  DMCA Notice Form, Audiomack, https://audiomack.com/about/legal (last visited Oct. 26, 2021).
[2] Copies of the first, second, and third notices have not been provided to the Court.

Track").   On September 19, 2019, Audiomack was served with a take-down notice pursuant to Section 512(c) of the DMCA, concerning the recording titled *Caramelo* by the artist Ninho (the "Infringing Track").[3]  <u>The Infringing Track is composed of my client's Copyrighted Track and a rap song</u> performed by Ninho over the Copyrighted Track. Audiomack has not removed the Infringing Track which is currently available on the Audiomack App[] and website <u>located at &lt;audiomack.com/ninhosdt/song/caramelo&gt;.</u>

(ECF No. 2-2 at 2 (emphasis added) (the "Fifth Notice")).  Garbarini asserted that Audiomack was liable to CB under the DMCA for over $60,000 in damages, and invited Ponte to contact Garbarini "if Audiomack is interested in resolving this matter pre-litigation."  (<u>Id.</u> at 2–3).  No reply from Audiomack appears in the Application, but according to Garbarini, Audiomack removed the Infringing Content promptly after receiving the Fifth Notice on October 7, 2021.  (ECF No. 2 ¶ 7).

**B.  <u>The Application</u>**

On October 15, 2021, CB filed the Application, asking the Clerk of the Court to issue a subpoena to Audiomack.  (ECF No. 2).  In its Application, CB asserted that: (1) Audiomack hosted the Infringing Content on its website; (2) CB issued four take-down requests via Audiomack's online form; (3) Audiomack removed the Infringing Content but it was later re-uploaded to Audiomack's platform; (4) on October 7, 2021, CB sent the Fifth Notice to Audiomack; (5) Audiomack again deleted the Infringing Content; and (6) CB seeks to identify the uploader and obtain the date the infringing content was uploaded.  (<u>Id.</u> ¶¶ 2–4, 6–8).  Garbarini swore "under the penalty of perjury that the information requested will be used solely for the purpose of protecting [CB's] rights under U.S. copyright law."  (<u>Id.</u> ¶ 9).   The Application's proposed subpoena (ECF No. 2-3 (the "Proposed Subpoena")) seeks "[d]ocuments sufficient to identi[fy] the entity responsible for uploading the musical track *Caramelo* by Ninho found at audiomack.com/ninhosdt/song/caramelo, including the name, email, and ad[d]ress of

---

[3] The Court notes that the Fourth Notice is dated September 9, 2019, not September 19.  (ECF No. 2-1).

the uploader" and "[d]ocuments sufficient to identify the date the track *Caramelo* was uploaded." (ECF No. 2-3 at 1).

On October 22, 2021, CB filed the Motion to Compel, asserting that "[t]he Clerk's Office has taken the position that it cannot issue the requested subpoena absent a judicial Order directing it do so." (ECF No. 5 at 1). In the Motion to Compel, CB asks the Court to order "the Clerk's Office to comply with the express wording of [the DMCA]." (Id. at 2).

### III. LEGAL STANDARDS

The DMCA allows a "copyright owner or a person authorized to act on the owner's behalf [to] request the clerk of any United States district court to issue a subpoena to a[n internet service provider ("ISP")] for identification of an alleged infringer." 17 U.S.C. § 512(h)(1); see In re Watch Tower Bible and Tract Soc'y. of Pa.'s Req. for Issuance of a Subpoena, No. 18 MC 301 (DLC), 2018 WL 3187355, at *1 (S.D.N.Y. June 28, 2018) (engaging in a 17 U.S.C. § 512 analysis); Strike 3 Holdings, LLC v. Doe, 337 F. Supp. 3d 246, 256 (W.D.N.Y. 2018) (applying the quoted language). A request for a subpoena under the DMCA must be accompanied by: (i) "a copy of a notification described in" section 512(c)(3)(A); (ii) "a proposed subpoena"; and (iii) "a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title." 17 U.S.C. § 512(h)(2)(A)–(C); see Watch Tower, 2018 WL 3187355, at *1. "The subpoena shall authorize and order the [ISP] receiving the notification and the subpoena to expeditiously disclose to the [petitioner] information sufficient to identify the alleged infringer of the material described in the notification to the extent such information is available to the [ISP]." U.S.C. § 512(h)(3); see Watch Tower, 2018 WL 3187355, at *1. "If the notification filed satisfies the provisions of subsection (c)(3)(A), the proposed subpoena is in proper form, and the

accompanying declaration is properly executed, the clerk shall expeditiously issue and sign the proposed

subpoena and return it to the requester for delivery to the service provider."   17 U.S.C. § 512(h)(4)

(emphasis added).

Section 512(c)(3)(A) of the DMCA sets forth the required elements of a notice of claimed

infringement.  Such a notice must: (1) be "a written communication;" (2) have been "provided to the

designated agent of" the ISP; and (3) include:

> (i) a signature "of a person authorized to act on behalf of the owner of" the copyright,
> (ii) "[i]dentification of the copyrighted work,"
> (iii) identification of the Infringing Content and "information reasonably sufficient to permit the service provider to locate the material,"
> (iv) "[i]nformation reasonably sufficient to permit the service provider to contact the complaining party,"
> (v) "[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law," and
> (vi) "[a] statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed."

17 U.S.C. § 512(c)(3)(A); see Watch Tower, 2018 WL 3187355, at *1.

## IV. DISCUSSION

### A.  Section 512(h)(2)(A-C) Requirements

To determine whether CB's request should have been granted in this case, the Court must first

ascertain whether CB has satisfied the requirements of the section 512(h)(2)(A)–(C) of the DMCA.  See

Watch Tower, 2018 WL 3187355, at *1.  The Court finds that CB has.  CB has supplied the Court with the

Proposed Subpoena as Exhibit 3 to the Application.  (ECF No. 2-3).  In compliance with the terms of

section 512(h)(3), the Proposed Subpoena requests information, which should be in Audiomack's

possession, sufficient to identify the alleged copyright infringer, i.e., who posted the Infringing Content

on Audiomack's website.  (ECF No. 1-3).  See 17 U.S.C. § 512(h)(3); Watch Tower, 2018 WL 3187355, at

*1.  Garbarini has also sworn in his Declaration "under the penalty of perjury that the information requested will be used solely for the purpose of protecting [its] rights under U.S. copyright law."  (ECF No. 2 ¶ 9).  The Declaration bears Garbarini's signature and therefore is properly executed.  (Id. at 2).  Thus, each of the requirements of section 512(h)(2)(A)–(C) have been met.

### B.  Section 512(c)(3)(A) Requirements

The Court must determine whether CB satisfied the terms of section 512(c)(3)(A) of the DMCA, which requires that an agent authorized to act on behalf of the owner of the copyright — CB — has notified Audiomack of the Infringing Content.  17 U.S.C. § 512(c)(3)(A); see Watch Tower, 2018 WL 3187355, at *1.  CB did so in the Fifth Notice, identifying the Copyrighted Track, which appeared within the Infringing Content, and providing a link to that material to enable Audiomack to locate and remove it.  (ECF No. 2-2 at 2).  The Fifth Notice also properly contained "[i]nformation reasonably sufficient to permit the [ISP] to contact" Garbarini by noting his address, phone number, and email address.  (Id. at 2–3).

The Fifth Notice reviewed in isolation, however, appears to be deficient for two reasons.  The first deficiency is the absence of "[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law," as required by section 512(c)(3)(A).  17 U.S.C. § 512(c)(3)(A).  Instead, the Fifth Notice referred back to the Fourth Notice, which merely reiterated that "[t]he Infringing Track is composed of [CB]'s Copyrighted Track and a rap song performed by Ninho over the Copyrighted Track."  (ECF No. 2-2 at 2).  The second deficiency in the Fifth Notice is the absence of "[a] statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed." 17 U.S.C. § 512(c)(3)(A); see Watch

Tower, 2018 WL 3187355, at *1. (See ECF No. 2-2 at 2 (stating only that Garbarini "represents" CB)).

Thus, the Fifth Notice alone does not satisfy the requirements of the DMCA for issuance of a subpoena.

The Court has also considered the Fourth Notice, however.  Like the Fifth Notice, the Fourth

Notice alone does not satisfy section 512(c)(3)(A) of the DMCA.  Moreover, as one court in this District

has recognized, a "form email reply from a service provider is not 'a copy of a notification described in

subsection [512](c)(3)(A).'"  Watch Tower, 2018 WL 3187355, at *2.  Unlike the form notice in Watch

Tower, however, the Fourth Notice in this case — which is an email showing Ponte's reply to Garbarini's

take-down notice — contains some of "the [missing] information enumerated in the [DMCA] statute,"

thus supplementing the Fifth Notice adequately for the limited purpose of the requested subpoena.  Id.

In the Fourth Notice, Garbarini wrote: "I am providing this notice in good faith and on the express written

authority of Yesh [] [CB's predecessor in interest], with the reasonable belief that the rights of my client

are being infringed.  Under penalty of perjury I certify that the information contained in the notification

is both true and accurate, and I have the authority to act on behalf of the owner of the copyright(s)

involved."  (ECF No. 2-1 at 3).  This language satisfies the remaining terms of 17 U.S.C. § 512(c)(3)(A).

The Court notes one other potential issue with CB's Application—neither the Fourth Notice, nor

the Fifth Notice, nor any other document in the Application, discusses the connection between Yesh, on

whose behalf Garbarini sent the Fourth Notice to Audiomack (ECF No. 2-1), and CB, the Petitioner here.

(ECF No. 2-2 at 2 (asserting that CB is "the sole owner, by assignment, of the copyrighted recording and

composition Anything You Synthesize – U.S. Copyright No. SR 713-287")).[4]  The DMCA requires the

---

[4] The Copyrighted Track appears still to be registered to Yesh per the Copyright Office's public catalog.  Public
Catalog, United States Copyright Office, https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?DB=local&PAGE=First
(click on "Other Search Options" and enter keywords "SR 713-287" and "Anything You Synthesize") (last visited
Oct. 27, 2021).

petitioner in a case such as this one to be a "copyright owner or a person authorized to act on the owner's behalf." 17 U.S.C. § 512(h)(1). Because Garbarini states, however, that he was authorized by both Yesh and CB to act on their behalf, and the Declaration was made under penalty of perjury (ECF No. 2 ¶ 11) the Court finds that, for purposes of the Application, CB has shown prima facie chain of title sufficient to justify issuance of the Subpoena, without prejudice to any party's future right to challenge CB's standing.

**V.CONCLUSION**

For these reasons, the Court GRANTS CB's Application, and DENIES CB's Motion to Compel. The Clerk of Court is respectfully directed to issue the Subpoena, close ECF No. 5, and close this case.

Dated:      New York, New York
            October 27, 2021

                        SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**